UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UPSTATE SHREDDING, LLC and
WEITSMAN SHREDDING, LLC,

        Plaintiffs,

        -against-                     3:12-CV-1015 (LEK/DEP)

NORTHEASTERN FERROUS, INC., and
JAY GOLDBLATT,

        Defendants.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

This matter comes before the Court on Defendants Northeastern Ferrous, Inc. ("Northeastern") and Jay Goldblatt's ("Goldblatt") (together, "Defendants") Motion for summary judgment on Plaintiffs Upstate Shredding, LLC ("Upstate") and Weitsman Shredding, LLC's ("Weitsman Shredding") (together, "Plaintiffs") original claims and Northeastern's counterclaims. Dkt. Nos. 25 ("Motion"); 25-10 ("Memorandum"). Plaintiffs filed a Response and cross-moved for judgment on the pleadings or summary judgment on behalf of Third Party Defendant Adam Weitsman ("Weitsman").[1] Dkt. No. 31-16 ("Response"). Defendants replied, and Plaintiffs filed an Sur-Reply to Defendants' Reply on the issue of their cross-motion. Dkt. Nos. 36 ("Reply"); 38. For the following reasons, Defendants' Motion is granted in part and denied in part, and Plaintiff's

---

[1] Although not styled as a cross-motion, Plaintiffs failed to move for summary judgment on Weitsman's behalf prior to the January 15, 2014, filing deadline established in Magistrate Judge Peebles' Uniform Pretrial Scheduling Order. See Dkt. No. 14. Accordingly, the Court considers this motion as a cross-motion. Therefore, Plaintiffs were not entitled to file a reply on their cross-motion, see Dkt. No. 38; Local Rule 7.1(c); however, the Court dismisses all claims against Weitsman anyway for the reasons discussed below.

cross-motion is granted.

## II.   BACKGROUND[2]

In or around September 2010, Plaintiffs, which are New York corporations engaging in the purchase and processing of scrap metals, began a course of dealing with Northeastern, a Canadian corporation, to acquire scrap metal. Dkt. No. 31-15 ("Plaintiffs' Response SMF") ¶¶ 1-2. Plaintiffs and Northeastern did not communicate directly; rather, all interactions occurred through a broker, John Finn ("Finn"). Id. ¶¶ 4-5. Specifically, Plaintiffs would quote a price per ton of scrap and send that quoted price to Finn. Id. ¶ 4. Finn would relay the quoted price to Northeastern, who would then arrange for a shipping company to haul materials to Plaintiffs' New York facility if the quoted price was agreeable. Id.

When shipments arrive at Plaintiffs' facility, Plaintiffs' employees in the scrap yard weigh the incoming shipment and determine the amount of dirt, debris, and other non-processable materials present. Id. ¶¶ 18-21. Plaintiffs' employees would often push apart the heap of scrap with a front-end loader to get a better view and make a more accurate determination as to dirt. Id. ¶ 25. After making that determination, Plaintiffs would radio their estimate to another Upstate employee, who would make a note on the scale ticket for each truck. Id. ¶ 24. The amount of debris would then be deducted from the total weight of the scrap shipment in order to derive the price owed to Northeastern. Id. ¶ 26. Although there is no industry standard regarding the amount of dirt to be

---

[2] On a motion for summary judgment, the Court is required to draw all inferences and resolve all disputes of fact in favor of the nonmoving party. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Therefore, where the parties each move for summary judgment, it may be necessary to distinguish between the parties' factual allegations. Id. at 152-53. However, because the facts of this case are largely not in dispute except as to the alleged bribery, the facts that form the basis for this section have been agreed upon by the parties except where otherwise specified.

expected or acceptable in a given shipment, Plaintiffs assert that a typical shipment would contain between one and a half and two percent dirt. Id. ¶ 27.

Between September 2010 and June 2011, Plaintiffs would regularly relay quoted prices to Finn; Northeastern would arrange shipment of materials to Plaintiffs; and Plaintiffs would calculate the weight of usable scrap and make payment to Northeastern. Id. ¶¶ 6-7. Starting in June or July of 2011, however, Plaintiffs began to withhold payment for received shipments. Id. ¶ 10. Northeastern halted new shipments of scrap to Plaintiffs; at this time, Weitsman contacted Northeastern, asked why shipments had stopped, and scheduled a meeting with Goldblatt, an owner of Northeastern, to discuss future transactions. Id. ¶¶ 11-12. After two meetings between Weitsman and Goldblatt at which Weitsman assured Goldblatt that payments would resume if Goldblatt resumed shipments, id. ¶¶ 13-14, Northeastern resumed shipments, and Plaintiffs did not pay for any of them. Id. ¶¶ 15-17.

Plaintiffs allege that Weitsman received a voice message from a shipping company driver who claimed to be hauling Northeastern scrap to Plaintiffs. Dkt. No. 31-2 ("Weitsman Affidavit") ¶ 17. In this voicemail, they claim, the driver alleged that other drivers had orders from Northeastern to pay Plaintiffs' employees to deduct only usual amounts of dirt weight even though the shipments contained significantly more dirt than was customary. Id. As a result, Plaintiffs allege, they stopped making payments to Northeastern. Id. ¶ 25.

Plaintiffs further allege that they contacted the Federal Bureau of Investigation ("FBI"), who began an investigation into the matter. Id. ¶ 19. In an attempt to gather evidence, the FBI directed Weitsman to set up a meeting with a representative from Northeastern at which Weitsman would wear a wire. Id. ¶¶ 30-31. At that meeting, Weitsman alleges, the FBI suggested that Weitsman

3

should do his best to get Northeastern to resume shipments, and to admit any occurrence of wrongdoing. Id. However, Plaintiffs make no allegations as to the results of the FBI investigation, or any consequences arising from that investigation. See generally id.; Pls.' Resp. SMF.

Plaintiffs then filed this action alleging breach of contract, common law fraud, conversion, and unjust enrichment claims against Defendants. Dkt. No. 1 ("Complaint"). In their Answer, Defendants counterclaimed against Plaintiffs, and additionally sued Weitsman individually, under the same causes of action advanced by Plaintiffs. Dkt. No. 9 ("Answer"). Following discovery, Defendants filed their Motion, which the Court now decides.

## III. LEGAL STANDARD[3]

Summary judgment is proper where "there is no genuine issue as to any material fact," and thus "the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 94 (2d Cir. 2012). The moving party must first meet a burden of production, which differs depending on whether the moving party will have the burden of proving the claim or element at trial. Celotex, 477 U.S. at 330-32 (Brennan, J., dissenting). If a moving party has carried its burden, the nonmoving party must raise some genuine issue of material fact; "metaphysical doubt as to material facts" is not enough. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That said, the court's duty is "carefully limited" to finding genuine disputes of material fact, "not to deciding them," Gallo v. Prudential Residential Servs., 22

---

[3] Although the Court evaluates Plaintiffs' cross-motion under the summary judgment standard, the distinction in this case is meaningless because the claims would be dismissed under either standard.

F.3d 1219, 1224 (2d Cir. 1994), because the Court is required to resolve all ambiguities in favor of the nonmoving party, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The burden of persuasion remains at all times with the moving party, who must affirmatively demonstrate entitlement to judgment as a matter of law. Celotex, 477 U.S. at 332.

## IV. DISCUSSION

### A. Breach of Contract

Under New York law, which the parties agree applies, the elements of a claim for breach of contract are "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996).

The undisputed facts of this case establish that, absent any putative fraud or bad faith, an otherwise enforceable contract existed between the two parties. Plaintiffs would send Northeastern an offer via Finn, which Defendants could accept by performance. Under the contract,[4] Northeastern would provide for shipment of the purchased scrap to Plaintiffs, for which Plaintiffs would provide payment after deducting any non-processable waste. It is also undisputed that Plaintiffs failed to perform their contractual obligations for all dealings in or after July 2011. Accordingly, Defendants have made out a *prima facie* case for breach of contract. Plaintiffs

---

[4] If the necessary elements of a contract otherwise exist and the parties intend to be bound by it, a contract exists regardless of whether there is a writing, as long as such a contract is not barred by the statute of frauds. See V'Soske v. Barwick, 404 F.2d 495, 499-500 (2d Cir. 1968). Here, the elements of a contract are otherwise met, and all parties' claims for breach of contract indicate that they intended to be bound. Accordingly, the Court finds that a contract or contracts existed between the parties.

5

respond that Defendants' bad faith conduct excuses nonperformance under the contract. Resp. at 17-20. However, Plaintiffs have failed to raise a genuine dispute of fact regarding bad faith.

To the extent Plaintiffs allege that Weitsman's summary of the voice message supports a finding of bad faith, it is hearsay. Out-of-court statements may not be offered to prove the truth of the matter asserted. FED. R. EVID. 801(c). The Weitsman Affidavit includes no citation to the original voice message, and it does not appear in the record before the Court. Weitsman Aff. ¶ 17. Indeed, Weitsman's account in his Affidavit appears to be solely based on his memory of the voice message from two years earlier. Id. Because the Court may only consider "admissible evidence" when examining the evidence on summary judgment, see FED. R. CIV. P. 56(c)(2), (e), the Court may not consider the contents of the voice message to establish an alleged fraud, see Keenan v. Town of Gates, No. 06-CV-6045L, 2011 WL 4711986, at *6 (W.D.N.Y. Sept. 15, 2011), Report and Recommendation adopted, 2011 WL 4829629 (W.D.N.Y. Oct. 12, 2011).

To the extent Plaintiffs rely on a Statement by Daniel Pero ("Pero"), a crane operator who was responsible for most of the dirt deduction determinations, Plaintiffs' nondisclosure of the document during discovery bars them from relying on it at summary judgment, as does the nature of the document as hearsay. Dkt. No. 31-4 ("Pero Statement"). The Federal Rules of Civil Procedure and case law are clear that the failure to disclose a document in discovery bars a party from relying on it at summary judgment "unless the failure was substantially justified or is harmless," FED. R. CIV. P. 37(c); the assertion of privilege falls under neither of those exceptions, see, e.g., SEC v. Grossman, 887 F. Supp. 649, 660-61 (S.D.N.Y. 1995) (holding that defendants could not claim privilege during discovery and then "complain that they are precluded from offering evidence on the very issues for which they have declined to provide discovery"). Furthermore, this statement was

made in 2011, fails to comport with the requirements of an affidavit, and does not meet the hearsay exceptions for an unavailable declarant because Defendants have not had any opportunity to develop the testimony through cross-examination. See FED. R. EVID. 804(b). Accordingly, the Court will not consider it here.

To the extent Plaintiffs rely on statements made by the FBI to Weitsman regarding results of the investigation, Weitsman Aff. ¶¶ 19-21; 29-30, these statements are improper as they reflect several levels of hearsay and lack any indicia of reliability to fulfill an exception. See FED. R. EVID. 801.

The only remaining evidence on which Plaintiffs rely to create a dispute of material fact is the Court's application of "common sense and logic to its analysis of the facts in this case," Resp. at 13, in particular to the deposition testimony of Plaintiffs' employee, Jason Lykens, who was partly responsible for calculating dirt deductions. Dkt. No. 31-5 ("Lykens Deposition"). However, Lykens consistently states the following facts, none of which tie the moneys they received to the dirt deductions: they started to receive payments from a man named Gordy, either directly or through a driver at his company, in the amount of $50 per truckload; these payments began while the shipping company was shipping for another provider of scrap metals; these payments continued, without change, while Defendants were providing scrap to Plaintiffs; and these payments concerned the speed at which Plaintiffs prioritized moving Gordy's trucks through the drop off process. See id. at 45:7-14; 77:6-78:16. Lykens even stated on several occasions that he assessed the fair amount of dirt for each shipment of debris, even if the drivers disapproved of Lykens' assessment. See, e.g., id. at 64:4-6; 74:9-19. Furthermore, there is no positive indication anywhere in the record that the

payments received from Gordy could be traced back to Northeastern Ferrous such that a reasonable jury could find that Northeastern Ferrous breached its contractual obligations.[5]

Plaintiffs argue that because the payments that Lykens received from Gordy on some occasions exceeded his weekly salary, the testimony *of their own employees* is not credible, and that unresolved credibility determination alone creates an issue of material fact. Resp. at 12-13. This is the type of "metaphysical doubt as to material facts" that the Supreme Court has held does not prevent summary judgment. Matsushita Elec., 475 U.S. at 586. Accordingly, the Court finds that Defendants are entitled to summary judgment on Upstate and Weitsman Shredding's breach of contract claims, and their own breach of contract counterclaim, with the issue of damages returned to the parties for further briefing.

### B. Additional Causes of Action

Plaintiffs and Defendants have asserted claim and counterclaims, respectively, under various tort and quasi-contract theories as alternatives to a breach of contract claim, including unjust enrichment, conversion, and fraud. Dkt. Nos. 1 ("Complaint") at 7-12; 9 ("Answer") at 12-14. Defendants have also asserted claims against Weitsman individually. Answer at 9-11. However, courts have consistently held that under New York law, parties may not bring suit based on tort and quasi-contract theories where a breach of contract action exists and the duty or promise allegedly breached is established by the contract. See, e.g., Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co., 516

---

[5] Additionally, there is ample evidence in the record showing that Plaintiffs' employees could not recall seeing excess foundry sand in the scrap shipments. See Lykens Dep. at 74:9-75:12 (stating that Lykens only recalled seeing "stuff that normally comes through the yard all the time" until "Adam [Weitsman] told him" that it was "foundry-type material"). To the extent Plaintiffs attempt to offer statements made by Weitsman or Gordy, relayed through Lykens, to defeat Defendants' Motion, they are inadmissible hearsay and therefore are not properly before the Court. FED. R. CIV. P. 801.

N.E.2d 190, 193 (N.Y. 1987) (holding that enforceable contract generally prevents recovery under quasi-contract theory of unjust enrichment); Wolf v. Nat'l Council of Young Isr., 694 N.Y.S.2d 424, 425 (App. Div. 1999) ("[A] claim to recover damages for conversion cannot be predicated on a mere breach of contract."); HSH Nordbank AG v. UBS AG, 941 N.Y.S.2d 59, 74 (App. Div. 2012) ("[I]f the [fraudulent] promise concerned the performance of the contract itself, the fraud claim is subject to dismissal as duplicative of the claim for breach of contract."). Accordingly, the Court dismisses all remaining claims and counterclaims as duplicative of the breach of contract claims.

### C. Breach of Contract Claim Against Weitsman

Regarding Defendants' breach of contract claim against Weitsman, Defendants have asserted neither that Weitsman was a party to the contracts between Plaintiffs and Northeastern, nor have Defendants advanced a theory that would allow the Court to impute Weitsman's companies' breach of contract to Weitsman individually. See generally Mem.; Reply. When there is no contractual relationship between two parties, there can be no claims arising out of contractual duties between them. See, e.g., Kerusa Co. LLC v. W10 Z/515 Real Estate Ltd. P'ship, 858 N.Y.S.2d 109, 111 (App. Div. 2008). Accordingly, all claims against Weitsman are dismissed.

### V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 25) for summary judgment is **GRANTED** to the extent it seeks summary judgment on: (1) all of Plaintiffs' claims against them; and (2) Northeastern Ferrous, Inc.'s breach of contract counterclaim against Plaintiffs, and **DENIED** to the extent it seeks summary judgment on all of Defendants' other counterclaims against Plaintiffs.

Additionally, all additional counterclaims against Plaintiffs are **DISMISSED** as duplicative of the breach of contract claim; and it is further

**ORDERED**, that Plaintiffs' Motion (Dkt. No. 31) for judgment on the pleadings or summary judgment on all claims against Third-Party Defendant Weitsman is **GRANTED**; and it is further

**ORDERED**, that Plaintiffs' Motion (Dkt. No. 37) to withdraw one stated ground for cross-motion is **DENIED as moot**; and it is further

**ORDERED**, that Adam Weitsman and Jay Goldblatt are **DISMISSED** from this action; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   September 30, 2014
         Albany, New York

Lawrence E. Kahn
U.S. District Judge