UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UPSTATE SHREDDING LLC AND
WEITSMAN SHREDDING, LLC,

                                                    Plaintiffs,

                        - vs -

NORTHEASTERN FERROUS, INC.
AND JAY GOLDBLATT,

                                                    Defendants.

                                                                    Civil Action No.
                                                                    3:12-cv-1015(BKS/DEP)

NORTHEASTERN FERROUS, INC.

                                        Counterclaim-Plaintiff,

                        - vs -

UPSTATE SHREDDING LLC,
WEITSMAN SHREDDING, LLC,
ADAM WEITSMAN,

                                        Counterclaim-Defendants.


**BRIEF IN SUPPORT OF MOTION TO QUASH PLAINTIFFS' SUBPOENA TO AGENT
JOHN BOKAL, JR. AND THE FEDERAL BUREAU OF INVESTIGATION**

## <u>TABLE OF CASES CITED</u>

<u>Auto-Owners Insurance Company v. Southeast Floating Docks, Inc.</u>, 231 F.R.D. 426
(M.D. Fla. 2005)…………………………..…………………………………………………7

<u>Dodson v. CBS Broadcasting, Inc.</u>, 2005 U.S. Dist. LEXIS 30126, No. 02-CV-9270
(S.D.N.Y. Nov. 29, 2005)…...…………………………………………..……………..…..7, 8

<u>Dreyer v. GACS, Inc.</u>, 204 F.R.D. 120 (N.D. Ind. 2001) …………..…………………………7

<u>Hartz Mountain Corporation v. Chanelle Pharmaceutical Veterinary Products Manufacturing,
Ltd.</u>, 235 F.R.D. 535 (D. Me. 2006) …………………………..……..…...……………………7

<u>Kaufman v. Columbia Memorial Hospital</u>, 2014 U.S. Dist. LEXIS 83344, No. 11-CV-667
(N.D.N.Y, June 19, 2014)…………………………………..……………………………11

<u>Langford v. Chrysler Motors Corporation</u>, 513 F.2d 1121 (2d Cir. 1975)………..………...…..…6

<u>Malmberg v. United States</u>, 2010 U.S. Dist. LEXIS 28784, No. 5:06-CV-1042
(N.D.N.Y. March 24, 2010) ...…………………………………………………………….7-8

<u>United States v. Sanders</u>, 211 F.3d 711 (2d Cir. 2000) …………………..…………………7

## INTRODUCTION AND SUMMARY OF ARGUMENT

On September 30, 2014, this Court entered an Order granting summary judgment in favor of Defendants Northeastern Ferrous, Inc. and Jay Goldblatt (collectively, "NEF") on all claims asserted by the plaintiffs.  (Dkt. 39).  The Court has also already adjudicated NEF's counterclaims in this case, granting summary judgment to NEF on its contract-based counterclaim and finding that the plaintiffs breached the contract with NEF.

The plaintiffs did not move for reconsideration of the Court's order, and the deadline to do so was October 14, 2014, three months ago.

The current status of this lawsuit and the "law of this case," as set forth in the Court's Order, is that plaintiffs have no remaining cause of action against NEF.  All that remains is for the Court to determine the amount of monetary damages to be entered in NEF's favor resulting from the plaintiffs' inexcusable breach of contract.

More than three months after the Court's Order dismissing all of plaintiffs' claims and finding that the plaintiffs breached the contract without justification, and more than one year after the close of discovery in this litigation, plaintiffs served a subpoena seeking records from the Federal Bureau of Investigation.  (Exhibit A, attached.)

The plaintiffs have stated that the basis for the subpoena is that the subpoenaed records are "directly related to the claims and defenses asserted by the parties[.]"  (See Exhibit A, the 12/30/2013 letter from Plaintiffs' counsel to AUSA Michael Gadarian enclosing subpoena).  Seeing that this Court has already held that there is no issue of material fact to support any of the plaintiffs' "claims and defenses," and seeing that the plaintiffs' "claims and defenses" have already been dismissed under Rule 56, there is no validity to the plaintiffs' asserted justification for the subpoena.

Moreover, there is no legitimate reason why plaintiffs' counsel could not have sought these records during the lengthy period of discovery in this case, which ended more than one year ago.

The records plaintiffs seek, to the extent they exist, pertain to an investigation *that plaintiffs themselves commenced in 2011*.  (Dkt. 31-2 at ¶ 19).   There is no justification for plaintiffs' failure to procure these records in the due course of the litigation if, as they now assert, these records are "directly related to the claims and defenses asserted by the parties."  (Ex. A at 2).  Throughout the life of this lawsuit (including during a Pretrial Conference before this Court as early as November 2012), plaintiffs' counsel frequently and consistently reported that there was an ongoing FBI investigation, that counsel was in communication with the FBI agent, that the subject and focus of the FBI investigation directly related to the claims in this civil lawsuit, that the subject and focus of the FBI investigation would support the plaintiffs' allegations in this case, that the information gathered by the FBI included statements/information that would support the plaintiffs' claims, and the like.  After all, it was the plaintiffs themselves who asked for the FBI investigation in the first place.  (Dkt. 31-2 at ¶ 19).  As a result, it is certainly not the case that any of the multiple attorneys from two separate law firms representing plaintiffs just recently learned about the existence of an FBI investigation, or about the contention that the FBI has information that purportedly might help the plaintiffs in this civil lawsuit.

Since it cannot honestly be claimed that Upstate was unaware of the FBI investigation, there is no reason why plaintiffs failed to obtain the potentially relevant information supposedly contained in the FBI's files.  Throughout the life of this lawsuit, any and all such information from the FBI was available to the plaintiffs in the exact same method and manner as it is sought

now, via subpoena served on a non-party.  Between the commencement of this lawsuit and the

close of discovery, there was no statutory or administrative restriction on plaintiffs' ability to

subpoena records from the FBI.  With the number of attorneys and law firms involved in this

case on behalf of plaintiffs, there certainly was ample opportunity for the plaintiffs to ascertain

the procedure for subpoenaing files from a non-party, even one as daunting as the Federal

Bureau of Investigation.

Finally, to the extent the plaintiffs suggest that these records may be relevant to a future

motion for reconsideration of the Court's September 30, 2014 Order (as they implied in a

previous filing [Dkt. 43 at 16-17]), that does not excuse plaintiffs' failure to abide by the

discovery deadlines set by this Court.  Any argument by the plaintiffs hoping for a motion for

reconsideration is mooted by Local Rule 7.1(g), which provides that a party has fourteen days

from "the entry of a judgment, order, or decree" to file a motion to reconsider.  In this case, 100

days (and counting) have passed since the Court entered its order on September 30, 2014,

meaning that the deadline for the plaintiffs to file such a motion expired long ago.

## **PROCEDURAL BACKGROUND**

On June 21, 2012, Upstate Shredding, LLC and Weitsman Shredding filed a civil lawsuit

against Northeastern Ferrous, Inc. and Jay Goldblatt asserting claims for breach of contract and

common law torts.  (Dkt. 1).  NEF subsequently filed a counterclaim against the plaintiffs and

also sued Adam Weitsman, the owner of Weitsman Shredding, individually.  (Dkt. 9).  On

November 16, 2012, the Court entered a Scheduling Order requiring that discovery in the case be

completed by December 16, 2013.  (Dkt. 14).  The parties engaged in comprehensive discovery,

which was completed within the Court's deadline.

On January 15, 2014, NEF filed a motion for summary judgment seeking dismissal of all claims and causes of action asserted by the plaintiffs, and seeking summary judgment on NEF's breach of contract counterclaims against the plaintiffs.  (Dkt. 25).  On February 18, 2014, the plaintiffs filed a cross-motion for summary judgment.  (Dkt. 31).

On September 30, 2014, the Court ruled on all motions.  The Court granted NEF's motion for summary judgment and dismissed all of the plaintiffs' claims that were asserted against NEF and Mr. Goldblatt.  The Court also granted NEF's motion for summary judgment on its counterclaim for breach of contract.  (Dkt. 39).[1]

Three months after this Court dismissed the plaintiffs' Complaint in its entirety, the plaintiffs served a subpoena directed to Agent John Bokal, Jr. and the Federal Bureau of Investigation (hereinafter collectively referred to as the FBI).  The subpoena seeks ten categories of records relating to the above-referenced investigation by the FBI.  (Exhibit A, attached).  Assistant United States Attorney Michael Gadarian accepted service on behalf of Agent Bokal.  The subpoena states a return date of January 15, 2015. (Ex. A).

## ARGUMENT

### 1.  Defendants Have Standing to Challenge Plaintiffs' Subpoena

A party typically has standing to challenge a subpoena to a non-party when the party is doing so to protect a personal privilege or right.  See Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975).  Courts have also recognized that a party has standing to object to a non-party subpoena when the party is doing so to enforce the Court's orders and rules.  See

---

[1]    On November 26, 2014, NEF filed a motion for an award of monetary damages and entry of judgment consistent with the Court's September 30, 2014 Order granting summary judgment for NEF on their breach of contract claim against plaintiffs.  (Dkt. 40).  In an Order dated January 9, 2015, the Court denied NEF's motion and instructed the parties to work with the Court to set a date for a trial on damages. (Dkt. 48).

Hartz Mt. Corp. v. Chanelle Pharm. Veterinary Prods. Mfg., Ltd., 235 F.R.D. 535, 536 (D. Me. 2006) (citing Dreyer v. GACS, Inc., 204 F.R.D. 120, 121-23 (N.D. Ind. 2001), and Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc., 231 F.R.D. 426, 428 (M.D. Fla. 2005) ("[A] party has standing to move to enforce the Court's orders and rules" when subpoenas issued to non-parties violate court's order or rule)).  Motions to quash are "entrusted to the sound discretion of the district court."  United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000).

Here, NEF moves to quash plaintiffs' subpoena to the FBI because it contradicts two Court orders:

> ➤ the Court's Uniform Pretrial Scheduling Order dated November 16, 2012 ("Scheduling Order") (Dkt. 14), which set out the discovery deadlines for the case, including a deadline for the completion of discovery in December 2013; and

> ➤ the Court's September 30, 2014 Order on the parties' summary judgment motions (Dkt. 39), which left but one issue remaining in this case: the amount of NEF's damages suffered as a result of the plaintiffs' breach of contract.

### 2. Plaintiffs' Use of a Rule 45 Subpoena To Effectively Reopen the Discovery Period Should Not Be Permitted

The Notice accompanying plaintiffs' subpoena states that the subpoena is tendered pursuant to Rule 45 of the Federal Rules of Civil Procedure, which governs trial subpoenas. Unlike other discovery subpoenas, Rule 45 subpoenas are narrow in purpose.  *See* Dodson v. CBS Broadcasting, 2005 U.S. Dist. LEXIS 30126, No. 02-CV-9270, at *3-4 (S.D.N.Y. Nov. 29, 2005) ("Rule 45 can be used to subpoena documents to be introduced at trial as trial exhibits, the need to do so should be limited because of the liberal federal pretrial discovery rules"); Malmberg v. United States, 2010 U.S. Dist. LEXIS 28784, No. 5:06-CV-1042 at *6-8 (N.D.N.Y.

March 24, 2010) (Rule 45 subpoenas are proper when "very limited in scope" and intended to be used "for cross-examination and impeachment only").

Courts in this Circuit have rejected parties' attempts to use Rule 45 subpoenas "as a means to engage in discovery after the discovery deadline has passed." Dodson, 2005 U.S. Dist. LEXIS 30126, at *3-4 (citing cases). In Dodson, the Court cited four reasons why the plaintiff's subpoena improperly contravened the limited purpose of Rule 45:  (1) the discovery deadline had long ago passed; (2) the subpoena was not made returnable to the Court, as would be expected of a subpoena seeking documents for use at trial; (3) the requests were broad in scope and "clearly [] designed for discovery, not last-minute trial needs"; and (4) the plaintiff had "ample discovery" during the case. Id.

The same circumstances exist with respect to plaintiffs' subpoena in this case:  (1) the discovery period lasted more than a year; (2) the subpoena directs the FBI's response to the office of plaintiffs' attorneys, not to the Court;  (3) plaintiffs request ten categories of documents, including, for example: "document(s) relating to business transactions" between plaintiffs and NEF, and "document(s) obtained from persons with any knowledge of deliveries" by NEF to plaintiffs (Exhibit A at 11, 12); and (4) the lengthy discovery period in this case afforded plaintiffs more than ample opportunity to seek these records that, by plaintiffs' own statements, correlate to an investigation commenced before this litigation even began.[2]

These factors should be significant and controlling as to why the subpoena should be quashed.  Each of the ten categories of documents itemized in the subpoena relates directly to the plaintiffs' previously-asserted allegations of bad faith by NEF.  Specifically, the focus of this

---

[2]   Indeed, the only categories of documents in plaintiffs' subpoena that are tethered to any dates specify one event allegedly occurring in July 2011 and another allegedly occurring in February 2013, neither occurring even near the completion of discovery in December 2013.

litigation, and one of the main points in both NEF's summary judgment motion and the Court's

Order granting summary judgment, was whether the plaintiffs should be excused from

performing under the contract because of NEF's alleged "bad faith."  This very issue has already

been decided by this Court, and any defense or claim that may have existed has already been

adjudicated and decided in NEF's favor.  There is no ambiguity as to what Judge Kahn decided

on this point:

> "It is also undisputed that Plaintiffs failed to perform their contractual
> obligations for all dealings in or after July 2011.  Accordingly, Defendants have
> made out a prima facie case for breach of contract.  Plaintiffs respond that
> Defendants' bad faith conduct excuses nonperformance under the contract.
> Resp. at 17-20.  **However, Plaintiffs have failed to raise a genuine dispute of
> fact regarding bad faith.**"

Dkt. 39 at p. 5-6 (emphasis added).  In its Order, the Court then addressed all of the allegations

asserted by plaintiffs to support their justification for breaching the contract, as well as all of the

bogus contentions about bad faith, and held that there was no disputed issue of fact to support

such allegations.  As a result, any and all claims of bad faith, and any basis to offset the amount

of money owed by the plaintiffs to NEF, have already been affirmatively determined and

rejected by this Court.  Those claims are no longer a part of this case.  Therefore, a subpoena

served on a non-party seeking support for claims that are no longer part of the case should be

quashed.

Plaintiffs' subpoena is nothing more than a discovery subpoena masked as a Rule 45 trial

subpoena.  The Court should not permit plaintiffs to circumvent the discovery deadlines set in

the Court's Scheduling Order and effectively reopen discovery after this Court's ruling on

summary judgment motions in this manner.

### 3. Plaintiffs Cannot Justify Their Failure to Seek These Records During the Discovery Period Set by the Court

In effectively seeking to reopen discovery following a lengthy discovery period and the Court's ruling on the claims, plaintiffs must provide an explanation for their failure to seek these documents during the year-long discovery period in this case, which ended in December 2013. Plaintiffs cannot do so.

In their Opposition to NEF's Motion for an award of damages and entry of judgment, filed December 16, 2014 (Dkt. 43), plaintiffs argue that they "should have a right to introduce [this] evidence at trial because they did not possess the material during discovery[.]"  (Id. at 17). Plaintiffs' failure to "possess the material during discovery" stems entirely and singularly from their failure to *seek* the documents during discovery.

There can be no dispute that plaintiffs were aware of the alleged investigation; after all, it was plaintiffs who contacted the FBI in 2011 and plaintiffs made multiple references to the investigation during written and oral discovery in this case.  *See*, *e.g.,* Dkt. 31-2 at ¶ 19; Dkt. 43 at 15, 16 ("[I]t cannot be any surprise to Defendants that Plaintiffs would seek the F.B.I.'s investigatory file, which…is relevant to this case.")  Simply put, regardless of the potential relevance of any such files, which NEF disputes in light of the current status of the litigation and the dismissal of plaintiffs' claims and defenses, plaintiffs offer no reason why they only now seek these records more than two years after discovery began, more than one year after the discovery period closed, and more than three months after the Court's ruling on the parties' summary judgment motions.

**4. Plaintiffs' Claim that the Material They Seek May Justify a Motion for Reconsideration is Without Merit**

In their previous filing challenging NEF's motion for an award of damages and an entry of final judgment, plaintiffs claim that the material they now seek from the FBI could give them grounds to move the Court to reconsider its September 30, 2014 Order pursuant to Federal Rule of Civil Procedure 54(b). (Dkt. 43 at 16-16). Plaintiffs long ago missed their window for filing a motion for reconsideration concerning the Court's Order. Local Rule 7.1(g) of this Court states, in pertinent part:

> (g) Motion for Reconsideration. Unless Fed. R. Civ. P. 60 otherwise governs, a party may file and serve a motion for reconsideration or reargument no later than FOURTEEN DAYS after the entry of the challenged judgment, order, or decree.

N.D.N.Y. Local Rule 7.1(g).

By its terms, the deadline set forth in Local Rule 7.1(g) applies broadly to judgments, orders, and decrees, not only to final judgments. *See* Kaufman v. Columbia Mem. Hosp., 2014 U.S. Dist. LEXIS 83344, No. 11-CV-667 at *6-7 (N.D.N.Y, June 19, 2014) (citing Local Rule 7.1(g) in analyzing a motion to reconsider under Fed. R. Civ. P. 54(b)). Nothing has transpired in this case since the Court's September 30, 2014 Order to alter the deadline set forth in Local Rule 7.1(g). Accordingly, any motion for reconsideration plaintiffs would seek to file would be untimely. As such, the plaintiffs' presumed justification for the subpoena will have no merit.

**CONCLUSION**

For the reasons set forth above, NEF respectfully requests that the Court quash plaintiffs' subpoena to Agent Bokal and the Federal Bureau of Investigation.

Dated:      Buffalo, New York
             January 14, 2015         NIXON PEABODY LLP

                                    By:    /s/ Mark A. Molloy
                                        Mark A. Molloy, Esq.
                                        Bar Roll: 511268
                                 *Attorneys for Defendants Northeastern Ferrous, Inc. and Jay Goldblatt*
                                    40 Fountain Plaza, Suite 500
                                    Buffalo, New York 14202
                                    Tel:  (716) 853-8100
                                    Email:  mmolloy@nixonpeabody.com