UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UPSTATE SHREDDING, LLC and
WEITSMAN SHREDDING, LLC,

        **Plaintiffs,**

   **-vs-**                                                  3:12-CV-1015 (BKS/DEP)

NORTHEASTERN FERROUS, INC.,

        **Defendant.**
_____

NORTHEASTERN FERROUS, INC.,

        **Counterclaim-Plaintiff,**

   **-vs-**

UPSTATE SHREDDING, LLC and
WEITSMAN SHREDDING, LLC,

        **Counterclaim-Defendants.**
_____

**APPEARANCES:**

Hiscock & Barclay, LLP
Jon P. Devendorf
Jason C. Halpin
One Park Place
300 South State Street
Syracuse, New York 13202
Co-Counsel for Plaintiffs

Levene, Gouldin & Thompson, LLP
Philip C. Johnson
450 Plaza Drive
Vestal, New York 13850
Co-Counsel for Plaintiffs

Nixon Peabody LLP
Mark A. Molloy
40 Fountain Plaza, Suite 500
Buffalo, New York 14202
Counsel for Defendant

**Hon. Brenda K. Sannes, United States District Court Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

On or about December 31, 2014, plaintiffs served a trial subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure on the Federal Bureau of Investigation ("FBI") and FBI Agent John Bokal, Jr. seeking information and materials the FBI obtained as a result of its investigation into defendant's business activities. Dkt. No. 49-2, p. 5. Presently before the Court is defendant's motion to quash the subpoena. Dkt. No. 49. Plaintiffs oppose the motion. Dkt. No. 51. For the following reasons, defendant's motion is denied.

## BACKGROUND

During the time period relevant to this action, plaintiffs Upstate Shredding, LLC and Weitsman Shredding, LLC, scrap metal processors, bought scrap metal, by the ton, from defendant Northeastern Ferrous, Inc. Dkt. No. 1 (Compl. ¶¶ 2, 4, 20). When the scrap metal shipments arrived, plaintiffs' employees would weigh the shipments and determine the amount of dirt, debris and other non-processable materials present. Dkt. No. 1 (Compl. ¶ 19). Plaintiffs' employees would then estimate the weight of usable scrap metal and pay defendant based on that weight. Dkt. No. 1 (Compl. ¶ 21). Plaintiffs claim that defendant perpetuated a scheme to overcharge them by bribing plaintiffs' employees to underreport the amount of debris contained in the scrap metal it delivered. Dkt. No. 1 (Compl. ¶¶ 22-31). Plaintiffs withheld payment for scrap metal deliveries they received between June 15, 2011 and August 15, 2011. Dkt. No. 9, pp. 9-12 (Counterclaims ¶¶ 11-24), Dkt. No. 40-2, pp. 3-7. To date, defendant has not been paid for these deliveries.

**Procedural History**

Plaintiffs filed this action alleging breach of contract, common law fraud, conversion and unjust enrichment claims against defendant. Dkt. No. 1. In its answer, defendant counterclaimed and alleged, among other claims, a breach of contract claim against plaintiffs. Dkt. No. 9.

Following discovery, the parties filed cross-motions for summary judgment. Dkt. Nos. 25, 31. In support of their motion for summary judgment, plaintiffs included evidence concerning an investigation by the FBI into defendant's activities. Dkt. No. 31-2. In a Memorandum-Decision and Order entered on September 30, 2014, United States District Court Judge Lawrence E. Kahn[1] recounted this evidence as follows:

> Plaintiffs . . . allege that they contacted the Federal Bureau of Investigation ("FBI"), who began an investigation into the matter. In an attempt to gather evidence, the FBI directed Weitsman to set up a meeting with a representative from Northeastern at which Weitsman would wear a wire. At that meeting, Weitsman alleges, the FBI suggested that Weitsman should do his best to get Northeastern to resume shipments, and to admit any occurrence of wrongdoing. However, Plaintiffs make no allegations as to the results of the FBI investigation, or any consequences arising from that investigation.

Dkt. No. 39, pp. 3-4 (internal citations omitted). Judge Kahn found this evidence did not preclude summary judgment in defendant's favor: "To the extent Plaintiffs rely on statements made by the FBI to Weitsman regarding results of the investigation, these statements are improper as they reflect several levels of hearsay and lack any indicia of reliability to fulfill an exception. See FED. R. EVID. 801." Dkt. No. 39, p. 7 (internal citation omitted). Judge Kahn denied plaintiffs' motion for summary judgment and found that defendant was entitled to: (1) summary judgment dismissing "all of Plaintiffs' claims;" and (2) summary judgment in its favor with respect to liability on its breach of contract counterclaim against plaintiffs. Dkt. No. 39, p. 9. Although defendant sought an award of damages and entry of judgment in the amount of $1,846,970.76 for breach of contract, Dkt. No.

---

[1]In an Order entered on December 29, 2014, Chief United States District Court Judge Gary L. Sharpe reassigned this case to the undersigned. Dkt. No. 44.

25-10, pp. 12, 30, Judge Kahn returned "the issue of damages . . . to the parties for further briefing." Dkt. No. 39, p. 8.

Defendant subsequently filed a "Brief in Support of Award of Damages and Request for Entry of Judgment," seeking $1,846,970.76 in damages for the June 15, 2011 through August 15, 2011 scrap metal deliveries. Dkt. No. 40-1. Plaintiffs opposed defendant's motion, arguing that based on the large amount of dirt and debris in the shipments, it overpaid defendant "by as high as forty-eight percent of the weight of each load" from September 19, 2010 through June 17, 2011. Dkt. No. 43, p. 11. Plaintiffs further argued that the June 15, 2011 to August 15, 2011 shipments, which are the subject of the upcoming damages trial, contained up to fifty percent dirt and debris, while the amount defendant seeks for those shipments reflects "a recorded dirt value of only approximately two percent." Dkt. No. 43, p. 11.

On January 9, 2015, the Court entered an Order declining to grant defendant's motion for an award of damages. Dkt. No. 48. A jury trial on the issue of damages is scheduled to commence on May 19, 2015. Dkt. No. 50.

**Subpoena**

On or about December 31, 2014, plaintiffs served a trial subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure on FBI Agent John Bokal, Jr. seeking information and materials that the FBI obtained as a result of its investigation into defendant's business activities. Dkt. No. 49-2, pp. 5-6. To the subpoena, plaintiffs attached a letter to Assistant United States Attorney Michael Gadarian, explaining why they were seeking the FBI's investigative materials:

> This information is highly relevant to the pending civil action because it relates to what we believe to be a scheme by Northeastern, Goldblatt, and/or Ontario Trucking to defraud Upstate Shredding and Weitsman Shredding, and/or to deliver worthless debris to Upstate Shredding and Weitsman Shredding and pay-off certain employees of Upstate Shredding and Weitsman Shredding to understate the amount of such worthless debris on invoices. To that end, we view our client as the victim of an unlawful criminal scheme who is now the subject of civil litigation and a potential civil judgment as a result. Such evidence is directly related to the claims and defenses asserted by the parties and is not available by other means.

Dkt. No. 49-2, p. 3. Plaintiffs are seeking documents, recordings, photographs, video recordings or written statements relating to: Ontario Trucking employees; business transactions between Weitsman Shredding and Upstate Shredding and Northeastern and Goldblatt; a meeting between Adam Weitsman and Agent Bokal at the Treadway Inn in Owego, New York; Upstate Shredding employees; the FBI's interview of Goldblatt; the FBI's interview of Gordy Madisia of Ontario Trucking; trucks making deliveries on behalf of Northeastern to the Upstate Shredding facility in Owego, New York; the "July 2011 voice recording left on voice mail for Upstate Shredding's president, Stephen Green, reporting that Upstate Shredding employees were being bribed to accept truckloads from Northeastern that contained excessive waste materials;" and "the investigation of the person with whom Adam Weitsman had a telephone conversation on February 18, 2013 regarding the conduct of Northeastern or Goldblatt, whose name is believed to be Peter Wangler." Dkt. No. 49-2, pp. 12-13.

On February 12, 2015, the parties filed a proposed stipulation for the Court's approval pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a, concerning the government's production of the investigative materials. Dkt. No. 52.[2] It is signed by plaintiffs' counsel, defense counsel[3] and AUSA Gadarian. It states, in relevant part:

> the FBI and U.S. Attorney's Office have completed their review of the Subpoena and the materials from the F.B.I.'s criminal investigation and intend to produce all records in the possession of the F.B.I. and/or Special Agent John Bokal, Jr. that are responsive to the Subpoena . . . in accordance with the Department of Justice's [*United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)] regulations notwithstanding how the Court intends to proceed with respect to the pending Motion to Quash.

---

[2] The proposed stipulation indicates that because the FBI and Agent Bokal believe that "the Privacy Act may apply to some or all of the Documents, which would prohibit disclosure of the Documents in the absence of an exception to the Privacy Act or consent of the party about whom the subpoenaed Document relates," the parties, including the government, agree that a Court Order is necessary for the production of documents. Dkt. No. 52, p. 2; *see* 5 U.S.C. § 552a(b)(11) ("No agency shall disclose any record which is contained in a system of records by any means of communication to any person . . . unless disclosure of the record would be--(11) pursuant to the order of a court of competent jurisdiction.").

[3] Although defendant agreed to the stipulation to the extent it concerned "the production of the Documents in accordance with the Privacy Act," it did "not concede or waive any of the arguments in their pending Motion to Quash, or any other objections to the Subpoena now or in the future." Dkt. No. 52, p. 3.

Dkt. No. 52, p. 2.[4]

## DISCUSSION

Defendant moves to quash the subpoena[5] on the grounds that it is an improper attempt to: (1) reopen discovery and (2) gather evidence to justify a motion for reconsideration of Judge Kahn's denial of plaintiffs' motion for summary judgment. Dkt. No. 49. Plaintiffs oppose the motion[6] and argue that defendant lacks standing to challenge the subpoena and that it is, in any event, a proper trial subpoena. Dkt. No. 51.

Whether a party has standing to quash a subpoena "depends on the nature of the information being sought." *First Indem. of Am. Ins. Co. v. Shinas*, No. 03 Civ.6634, 2005 WL 3535069, at *3, 2005 U.S. Dist. LEXIS, at *9 (S.D.N.Y. Dec. 23, 2005). "A party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right." *Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004); *see* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2459 (3d ed. 2008) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought."). Here, defendant does not identify any personal right or privilege concerning the documents plaintiffs seek from the FBI. It claims only that plaintiffs are attempting to use the subpoena improperly to reopen discovery and gather evidence to justify a motion for reconsideration of Judge Kahn's Memorandum-Decision and Order on the parties' summary judgment motions. Dkt. No. 49-1, p. 7. Defendant therefore has not asserted any basis on which the Court might find standing to challenge the substantive reasonableness of the subpoena. *Malmberg v.*

---

[4] The Court has not yet endorsed the proposed stipulation. The Court has directed the parties to either submit letter briefs regarding whether there should be a protective order governing the dissemination of Privacy Act information concerning third persons who are not parties in this case, *see Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987), or submit a proposed stipulated protective order. Dkt. No. 54.

[5] The subpoena's response date was January 15, 2015. Dkt. No. 49-2, p. 5.

[6] The government has not joined the motion to quash.

*United States*, No. 5:06-CV-1042, 2010 WL 1186573, at *2, 2010 U.S. Dist. LEXIS 28784, at *3 (N.D.N.Y. Mar. 24, 2010).

Defendant, however, challenges the subpoena on the basis that, while styled as a Rule 45 trial subpoena,[7] it is an untimely attempt to reopen discovery, which ended more than a year ago. Dkt. No. 14. In general, "service of a Rule 45 trial subpoena after the close of discovery is improper." *McKay v. Triborough Bridge & Tunnel Auth.*, No. 05 Civ. 8936, 2007 WL 3275918, at *2, 2007 U.S. Dist. LEXIS, at *4 (S.D.N.Y. Nov. 5, 2007) (citing *Dodson v. CBS Broad., Inc.*, No. 02 Civ. 9270, 2005 WL 3177723, at *1, 2005 U.S. Dist. LEXIS 30126, at *3-4 (S.D.N.Y. Nov. 29, 2005)); *see also* Moore et al., *Moore's Fed. Practice* § 45.02[4][a] (3d ed. 2013) ("[A] Rule 45 subpoena may not be used to circumvent discovery rules or to make an untimely request for documents or tangible things that should have been requested during the discovery period.").

Even assuming, however, that plaintiffs' subpoena is an untimely discovery subpoena rather than a trial subpoena, plaintiffs have provided a reasonable explanation for the delay. Plaintiffs state they did not issue the subpoena earlier because the FBI Agent indicated to plaintiffs' counsel that "information regarding the investigation . . . could [not] be divulged" while the investigation was pending. Dkt. No. 51-2, p. 4. The court finds that the delay in issuing the subpoena was reasonable. *See*, *e.g.*, *Malmberg*, 2010 WL 1186573, at *3, 2010 U.S. Dist. LEXIS 28784, at *8 (denying the plaintiff's motion to quash pre-trial subpoena, holding that even if the "subpoenas were not properly classified as trial subpoenas but were discovery subpoenas, [the] [d]efendant's delay in issuing them was not undue and was justified in light of the timing of [the] [p]laintiff's expert deposition").

Defendant further argues that plaintiffs are using the subpoena to obtain evidence on which they might base a motion for reconsideration. Dkt. No. 49-1, p. 11. While plaintiff has previously

---

[7] "In certain circumstances, it is appropriate for parties to use trial subpoenas, such as for securing original documents previously disclosed during discovery or for purposes of memory recollection or trial preparation." *Malmberg*, 2010 WL 1186573, at *3, 2010 U.S. Dist. LEXIS, at *7.

argued that the FBI file may provide a basis for reconsideration, plaintiff has also argued that the FBI file may contain evidence for trial. *See*, *e.g*., Dkt. No. 43, pp. 20-21.  Plaintiffs specifically explain in their response papers that the "the subpoenaed information will be used to cross-examine and/or impeach [trial] testimony." Dkt. No. 51, p. 17; *see Malmberg*, 2010 WL 1186573, at *3, 2010 U.S. Dist. LEXIS, at *8 (concluding that the defendant's intention to use the subpoenas at issue "for cross-examination and impeachment only" supported their classification as trial subpoenas). Accordingly, defendant's motion to quash is denied.

## CONCLUSION

For these reasons, it is

**ORDERED** that defendant's motion to quash (Dkt. No. 49) is **DENIED.**

**IT IS SO ORDERED.**

**Dated: February 13, 2015**

Brenda K. Sannes
U.S. District Judge